## The Jacksonville & St. Louis Railway Company v. John Lamming.

1. VERDICT—*when, not excessive.* A verdict of $1,000 is not excessive where it appears that the plaintiff was a contractor earning at the time of his injury from $60 to $80 a week and that his injuries consisted of various bruises, a slight bending of a bone in his arm and, as a consequence, incapacity to work for a period of four months or more, together with some degree of permanent injury.

Action on the case for personal injuries. Appeal from the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed November 18, 1904.

EDWARD P. KIRBY, for appellant.

J. MARSHALL MILLER and HARRY M. TICKNOR, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against appellant for $1,000 for personal injuries received by him while a passenger on appellant's train. It is charged in the first count of the declaration that appellant was negligent in the management and conduct of its train, by reason whereof the coach in which appellee was riding was overturned; in the second count, that appellant was negligent in running its train at a high, unsafe and unreasonable rate of speed by reason whereof said coach was overturned; and in the third count, that appellant was negligent in permitting its track and road-bed to become unfit and unsafe for the running of trains thereon, in this, that the cross-ties were decayed and rotten, the iron badly laid, and the track without proper ballast or support to give it solidity, by reason whereof said coach was derailed and overturned.

On December 4, 1902, appellee became a passenger on appellant's train, consisting of a locomotive, tender, combined baggage and smoking car and a passenger coach, leaving Jacksonville between seven and seven-thirty o'clock A. M. At Curry's Crossing, about seven miles southeast of

Jacksonville, while the train was running at the rate of thirty miles an hour, the passenger coach in which appel·lee was riding was derailed and overturned, and appellee thereby injured. The evidence tends to show that the ground was wet and muddy from recent rains or melting snow; that the road-bed was not ballasted; that many of the cross-ties were decayed to such an extent that they did not hold the spikes driven into them to keep the rails in place; that at or about the point where the passenger coach was derailed there was an unusual bend in the rails; that at one point where the ties were decayed, the south rail had spread or slipped out several inches. These facts in the absence of any proof that the coach was derailed by another cause, are sufficient to account for such derailment. Appellant introduced evidence that the back brake-beam of the tender, one hanger and the chain on the brake-rod were broken and that the brake-lever and brake-rod were gone—this as tending to show that the coach may have been derailed by the falling of some of the broken parts, upon the rail. It is possible that the coach was thus derailed, but it is mere matter of conjecture, in the absence of any direct proof to that effect. . We are of opinion that the jury were justified in concluding that the proximate cause of the derailment of the coach was the condition of the road-bed and cross-ties.

Expert evidence was also introduced by appellant tending to show that fourteen to eighteen cross-ties to each thirty-foot rail, were ordinarily considered sufficient to maintain the track at the proper gauge, and that if six or seven such ties properly distributed under each rail, were sound, the track was considered practically safe. There is also evidence tending to show that the track had been inspected by appellant's servants shortly prior to the accident and that there were from six to seven sound ties properly distributed under each rail. Assuming that appellant's duty with reference to the construction and maintenance of its track is to be measured and determined by the foregoing engineering rule, there is, upon

the other hand, evidence in the record tending to show that a majority of the cross-ties upon the track in question were badly decayed; that the sound ties were not uniformly distributed upon the track; and that immediately at the point upon the track where the rail spread, some three or four ties were badly decayed. We are not disposed to say in this case that the jury erroneously found appellant guilty of negligence in the respect indicated.

It is urged that the amount of the verdict is so excessive as to justify the conclusion that it was the result of prejudice upon the part of the jury against appellant, rather than of calm consideration of the evidence as to the extent of the injury to appellee. Appellee is a contractor and builder and was earning at the time of his injury, as he testifies, from sixty to eighty dollars a week. He was severely bruised about his limbs and breast and suffered an injury to his left arm above the elbow, described as a slight bending of the bone in the arm. He was in the hospital for treatment ten days. He testifies that he was unable to do any work as a carpenter and builder for four months or more after his injury; that at the time of the trial, about a year after his injury, he was unable to lift his arm above his shoulder, and unable to lift or carry any heavy weight. Dr. McLaughlin, surgeon for appellant, testified, concerning appellee's injury, "It is difficult to say what permanency of injury there will be." While we are disposed to think appellee exaggerated, to some extent, his earning ability, and the severity of his injuries, there is evidence in the record tending to show that his injuries may be in some degree permanent, and we are not prepared to say that the verdict is so manifestly excessive as would justify a court of review in reversing the judgment upon that ground.

The fifth and sixth instructions given by the court at the request of appellee authorize the jury in determining the amount of damages to be awarded to him, to take into consideration future suffering and loss of health which he has sustained or will sustain, and permanent injuries sustained by him, if any, shown by the evidence. There is some

evidence of permanent injury in the testimony of Dr.
McLaughlin, and in the fact testified to by appellee, that
one year after the injury he was still suffering pain and
was unable to use his arm. The instructions are therefore
not open to the criticism that they are not predicated upon
any evidence in the case.

We find no substantial error in the record, and the judg-
ment will be affirmed.

*Affirmed.*